**DEPARTMENT OF LABOR AND INDUSTRY, BUREAU OF WORKFORCE DEVELOPMENT PARTNERSHIP, Petitioner**

v.

**DEAN INSTITUTE OF TECHNOLOGY, INC., Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 10, 2014.
Decided March 27, 2014.

Beth S. Harris, Assistant Counsel, Harrisburg, for petitioner.

Emily H. Bensinger, Harrisburg, for respondent.

BEFORE: LEADBETTER, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

The Department of Labor and Industry, Bureau of Workforce Development Partnership (Department) petitions for review of the July 29, 2013 order of the Board of Claims (Board) entering judgment in favor of the Dean Institute of Technology (Dean Tech) with respect to sixty-four of eighty-three disputed invoices. We affirm.

In 2002, Dean Tech, a vocational-technical school, entered into a five-year contract, from July 1, 2002, to June 30, 2007 (2002 Master Agreement), with the Department pursuant to the Trade Adjust-

ment Assistance (TAA) program.[1] Under the terms of the 2002 Master Agreement, Dean Tech could enroll new students in TAA funded programs during the first three years of the 2002 Master Agreement, and these students had until June 30, 2007, to complete such training with payment by the Department. The eighty-three disputed invoices at issue are for vocational training provided to displaced workers over a period stretching from January 2003 to December 2004, with the invoices dated February 2003 to January 2005. Under section 4(f) of the 2002 Master Agreement, the deadline for submission of invoices was originally set forth as follows: "[t]he final payment request shall be submitted 30 days prior to the expiration or termination date of the [2002 Master] Agreement and shall be marked 'Final.'" (Board's Findings of Fact Nos. 2, 11–12, 15, 19, 22.)

In 2003, the parties amended the 2002 Master Agreement, effective October 31, 2003 (2003 Amendment).[2] (Board's Finding of Fact No. 29.) In relevant part, the 2003 Amendment shortened the deadline for submission of invoices in order to facilitate reallocation of funds from inactive accounts to pay for other students' training as follows:

The Contractor shall **not** be paid if invoices are not received within 60 days of the completion of the training, completion of the semester, term or quarter or the end of the month for training provided on a clock hour basis, whichever is applicable. The last invoice for each student shall be marked "Final."

(Board's Finding of Fact No. 30) (emphasis in original).

During the period of February 2003 to January 2005, when the eighty-three disputed invoices were prepared, Dean Tech routinely filled out some invoices (including eighty-one of the eighty-three disputed invoices) on a form different from the forms prescribed by either the 2002 Master Agreement or the 2003 Amendment. The alternate invoice form Dean Tech used for those eighty-one invoices was on Dean Tech letterhead and set forth a different recipient than the ones provided in the 2002 Master Agreement and the 2003 Amendment, a different ZIP code than the one provided in the 2002 Master Agreement and the 2003 Amendment, and failed to specify that the invoices should be sent to the twelfth floor of the Department's building as specified in the 2002 Master Agreement and the 2003 Amendment. Dean Tech sent the invoices to the Department's Office of Employment Security, an

1. The TAA program is a federally funded program that pays for the training of displaced workers in several educational programs offered by institutions like Dean Tech so that the workers may re-train and re-enter the workforce in different occupations that provide similar wages and benefits as the jobs from which they were laid off. (Board's Finding of Fact No. 11.) The federal government granted funds for the TAA program for a five-year period under the Federal Trade Act of 1974, 19 U.S.C. §§ 2101–2487, and any unused sums reverted to the federal government at the end of that period. After the end of the 2002 Master Agreement's contract period (and a short reconciliation period thereafter), remaining federal funds for that agreement expired and were no longer available to

pay for training provided under the 2002 Master Agreement. (Board's Finding of Fact No. 14.)

2. The 2003 Amendment, at Paragraph 7, states: "All other terms and conditions of the [2002 Master Agreement] remain the same. These Amendments are effective October 1, 2003." However, the parties have stipulated that: "[i]n 2003, the Department and [Dean Tech] executed an amendment to the 2002 Master Agreement (2003 Amendment), which was effective October 31, 2003." Accordingly, the Board used October 31, 2003, as the effective date of the 2003 Amendment. (Board's Finding of Fact No. 29 n. 1.)

entity within the Department that once handled federally funded workforce development and unemployment compensation matters but had been defunct since 1985. Although the eighty-three unpaid invoices were prepared between 2003 to 2005, Dean Tech did not make any inquiry concerning these invoices until 2006, when Richard Ali (Ali), Dean Tech's Director of Education, directed a generalized review of student files for unpaid invoices. (Board's Findings of Fact Nos. 23–24, 31–32, 34–35, 40.)

On January 28, 2007, Dean Tech sent a letter to the Department referencing a discussion between a Department representative and Ali, enclosing the eighty-three disputed invoices (among others), and requesting payment of the same. The parties acknowledge that the Department received the eighty-three disputed invoices shortly after Dean Tech submitted them by cover letter dated January 28, 2007, between two to four years after the stated dates on the actual invoices. (Board's Findings of Fact Nos. 41–42.) On March 15, 2007, the Department sent Dean Tech a letter stating that the eighty-three disputed invoices could not be paid because the "federal funds for this time frame [2/1/2003 through 12/31/2004] ha[d] expired[,]" (Board's Finding of Fact No. 43), and referenced the deadline for submission of invoices set forth in the 2003 Amendment. On July 30, 2008, Dean Tech sent a letter to the Department with a list of students and copies of the original invoices, asking the Department to confirm payment. On August 26, 2008, Dean Tech sent another letter to the Department indicating that it was being audited and requesting confirmation that the Department owed it $204,706.70, as indicated by an enclosed statement listing unpaid invoices. (Board's Findings of Fact Nos. 43, 45–46.)

The Department did not acknowledge Dean Tech's July 30, 2008 letter or submission of invoices. On December 29, 2008, the Department sent Dean Tech a letter responding to the August 26, 2008 submission, stating that the eighty-three disputed invoices could not be paid because federal funds for the 2002 Master Agreement had expired and payment could not be made in accordance with the terms of the 2002 Master Agreement and referencing the sixty-day deadline for submission of invoices provided in the 2003 Amendment. On January 20, 2009, Dean Tech sent a letter to the Department stating that it did not agree with the refusal to pay the eighty-three disputed invoices (among others) and requesting the re-examination of the invoices.[3] By letter dated

---

3. The January 20, 2009 letter read as follows:

Dear Mr. Areles Reeves–Luckette:
Dean Institute of Technology would like to thank you for your efforts for arranging payment of the invoices for Alex Frazier, Jeff Golonka and Donald Erdner. However, after receiving Ms. Christine Enright's letter dated December 29, 2008 explaining why the remaining invoices, totaling $174,947.00, have not been paid, we, respectfully, do not agree with this ruling. Although Dean Tech agrees that any invoice dated after the Master Agreement expires should not be paid, you will find that every invoice in question was dated and sent within the required timeframe of the Master Agreements. Since Dean Tech adhered to the rules of the Master Agreements and trained properly authorized students in good-faith, we believe the school should not be penalized and forced to absorb the cost of training these students. Therefore, Dean Institute of Technology is requesting that your organization re-examine these invoices and hopefully agree that all rules were followed. Assuming you agree, Dean Tech is asking that these be paid as soon as possible.
If you have any questions or would like to discuss in more detail, please contact Mr. Richard D. Ali, Director of Education, at (412) [XXX–XXXX].
Thank you for your cooperation.
Sincerely,
James S. Dean

February 11, 2009, the Department responded to Dean Tech's latest request for review and again denied payment.[4] In the February 11, 2009 letter, the Department stated that it could not be sure that the invoices had been received when they were originally submitted because the invoices indicated an address different from the one set forth in the 2002 Master Agreement. The letter concluded with an invitation to call the Department with any ques-

tions. (Board's Findings of Fact Nos. 47–48.)

On March 20, 2009, Stuart R. Kaplan (Kaplan), Dean Tech's attorney, sent a letter to Christine Enright (Enright), at the time the Department's Director of the bureau in charge of paying the invoices, requesting that the Department reconsider payment of the eighty-three disputed invoices (among others).[5,6] The Depart-

President
(Reproduced Record (R.R.) at 205a.)

4. The February 11, 2009 letter stated as follows:

Dear Mr. Dean:
This letter is in response to your correspondence dated January 20, 2009. Please be advised that we have again reviewed the invoices that were submitted to us on August 26, 2008.
All of the unpaid invoices you submitted are dated for the years 2002, 2003 and 2004 and addressed to The Office of Employment Security. The Master Agreement signed by you on April 2, 2002 clearly states that all invoices requesting payment under that agreement should be addressed as follows:
    TAA Unit/Invoicing Section
    Bureau of Workforce investment [sic]
    Department of Labor and Industry
    12th Floor, Labor and Industry Building
    Harrisburg, PA 17121
Since this procedure was not followed by your training facility, and the copies we received from you indicates [sic] a different address than the one shown above, we can not [sic] be certain that we had received the invoices when they were originally submitted.
Therefore, your request for payment of those invoices is denied.
If you have any questions, please contact Areles Reeves–Luckette, Manager, Grants/Fiscal Coordination Services at (717) [XXX–XXXX].
Sincerely,
Christine M. Enright
Director
(R.R. at 207a.)

5. The letter read as follows:
Dear Ms. Enright:

We are writing on behalf of our client, Dean Institute of Technology ("Dean Tech"), in connection with the invoices that were denied for payment pursuant to your letter dated February 11, 2009, a copy of which is enclosed. Please direct and instruct your legal counsel to direct all further correspondence concerning this matter to the undersigned.
We are of the view that once you have been presented with all of the facts, you will agree that Dean Tech has not been treated fairly with respect to the significant training it has provided to citizens of the Commonwealth pursuant to its Trade Adjustment Assistance Master Agreement (the "Master Agreement") covering the period July 1, 2002 through June 30, 2007. Moreover, we respectfully assert that the grounds cited in your February 11, 2009 letter for the non-payment of Dean Tech's invoices are not sustainable in that:
    (a) Although it is true that Dean Tech initially sent its invoices to the Office of Employment Security (the "Initial Mailing Address"), it was advised to do so by the Bureau of Workforce Investment, and should therefore not be penalized for complying with this directive, even though the Initial Mailing Address differed in part from the billing address set forth in paragraph 4(d) of the Master Agreement;
    (b) Moreover, the Master Agreement's billing address, as set forth in paragraph 4(d) thereof, also differed from the billing address appearing in the Commonwealth's Invoice that served as Attachment 4 to the original Master Agreement (copy enclosed), and so confusion over the proper mailing address for Dean Tech's invoices, as cited in your letter as a reason for non-payment, should not be attributed to Dean Tech;

ment's chief counsel replied on July 31, 2009, stating that the Department would review Dean Tech's concerns and reply shortly.[7] After receiving no response, Dean Tech commenced this action before the Board on August 5, 2009, by filing a statement of claim against the Department seeking payment of the invoices. (Board's Findings of Fact Nos. 4, 49, 52–53.)

The Board conducted a hearing with respect to the eighty-three disputed invoices. James Dean (Dean), Dean Tech's owner and president, testified that Dean Tech provides training to displaced adult workers through the TAA program overseen by the Department. Dean stated that he thought he was in a continuing dialogue with the Department when Dean

(c) In addition, the Bureau of Workforce Investment was fully aware that Dean Tech was performing the training it is now seeking reimbursement for, specifically authorized Dean Tech to provide the training to each student involved, and encouraged Dean Tech to make the training available. Under these circumstances, the Bureau most certainly should have budgeted to pay Dean Tech for the training it contracted Dean Tech to provide;

(d) The Initial Mailing Address used by Dean Tech was to the same building appearing in the address provided in paragraph 4(d) of the Master Agreement and was successfully used by Dean Tech to submit invoices to and receive reimbursement from your office both prior to and following submission of the invoices that are now being denied for payment; and

(e) Evidence that Dean Tech's invoices were received when initially submitted is available to your office in the form of the date-stamped envelopes in which they arrived, and may be further evidenced by the testimony and affidavits of the personnel who mailed and opened them.

Under these circumstances, we hope that you will reconsider the payment denial contained in your letter of February 11, 2009 and assist Dean Tech in recovering the fair compensation to which it is entitled for the training it provided under the Master Agreement.

Very truly yours,
Stuart R. Kaplan
(R.R. at 210a–11a.)

6. There were two versions of the March 2009 letter entered into evidence, one bearing a March 20, 2009 date (but missing the law firm letterhead and attorney's signature) and the other bearing the date March 23, 2009 (which was on the law firm's letterhead and had a signature of the attorney and a hand-

written notation "file copy"). The Board believed that the presence of the firm letterhead, signature, a later date, and the "file copy" notation demonstrated that the letter dated March 23, 2009, was actually the letter sent (and the copy dated March 20, 2009, was an earlier draft of the same). This conclusion is further confirmed by the fact that the Department admitted the authenticity of the March 23, 2009 letter in the pleadings. (Board's Finding of Fact No. 50.)

Notwithstanding the foregoing, the parties have stipulated that the March 2009 letter was "sent" on March 20, 2009. That said, Dean Tech further introduced uncontroverted testimony indicating that the March 2009 letter was sent by U.S. mail (or some similar means other than hand or same-day delivery) so that it could not have been received by the Department until the next business day at the earliest. As requested by Dean Tech at the hearing, the Board took judicial notice that March 20, 2009, was a Friday and the next business day was Monday, March 23, 2009. Accordingly, whether the stipulation of the parties or the clear import of the documents themselves is credited, the Board found that the March 2009 letter was not received by the Department until March 23, 2009, at the earliest. (Board's Finding of Fact No. 51.)

7. The July 31, 2009 letter stated as follows:

Dear Mr. Kaplan:

I have received a copy of the March 20, 2009 letter you submitted to the Pennsylvania Department of Labor & Industry on behalf of Dean Institute of Technology regarding the invoices submitted by your client. The Department will review your letter and issues involved and reply to you shortly.

Sincerely,
Jane C. Pomerantz
Chief Counsel
(R.R. at 216a.)

Tech sent the January 20, 2009 letter to the Department requesting reconsideration of payment for the disputed invoices. Dean testified that, after Dean Tech received the February 11, 2009 letter from the Department, he thought Dean Tech had to file a claim and that it did so by letter dated March 20, 2009. (R.R. at 539a, 552a.) Nancy Grom (Grom), Dean Tech's former Financial Aid Director, also testified for Dean Tech. Grom stated that she and another Dean Tech employee, June Ganser, prepared the invoices and that there was never a time when she created an invoice that was not mailed. (R.R. at 707a–08a, 714a.)

Testifying for the Department, Enright stated that the 2003 Amendment was the result of trying to improve the Department's fiscal operations. (R.R. at 659a.) Karen Stepanik, the Department's Workforce Development Analyst II, testified that the Office of Employment Security was not referenced in the TAA program. (R.R. at 667a–68a.) Debra Walkowiak, the Department's Fiscal Technician, testified that during the time period in question, she delivered the mail to the Department's bureau responsible for administering the TAA program and would return misaddressed mail to the mailroom. (R.R. at 670a–71a.)

By decision and order dated July 29, 2013, the Board noted that it had subject matter jurisdiction over the claim in this case arising from the contract that Dean Tech entered into with the Department under section 1724(a)(1) of the Procurement Code.[8] The Board determined that, because the Department's December 29, 2008 letter responding to Dean Tech's request for confirmation of payment clearly and affirmatively denied payment of the eighty-three invoices, Dean Tech's right to file an administrative claim with the Department for breach of the 2002 Master Agreement and 2003 Amendment accrued as of that date. The Board also determined that the Department's February 11, 2009 letter lacked the finality and the certainty requisite to be considered a final determination of an administrative claim and this letter did not commence the running of the fifteen-day period of limitations under section 1712.1(e) of the Procurement Code.[9] The Board concluded that the Department did not consider this letter a final determination pursuant to *Schmidt v. Commonwealth*, 495 Pa. 238, 433 A.2d 456 (1981); *Wayne Knorr, Inc. v. Department of Transportation*, 973 A.2d 1061 (Pa. Cmwlth.2009); and *In re Appeal of Borough of West View*, 93 Pa.Cmwlth. 380, 501 A.2d 706 (1985), because the Department closed the letter by inviting Dean Tech to submit questions to the Department and it subsequently responded to Dean Tech's March 23, 2009 letter. (Board's Conclusions of Law Nos. 1, 5–7.)

The Board concluded that Dean Tech's March 23, 2009 letter constituted Dean Tech's administrative claim pursuant to section 1712.1(a)-(c) of the Procurement Code, because the letter stated Dean Tech's grounds for disputing the Department's denial of payment. The Board further concluded that the Department never issued a final determination in response to Dean Tech's March 23, 2009 administrative claim. Accordingly, Dean Tech's statement of claim, filed with the Board on August 5, 2009, was timely under section 1712.1(e) of the Procurement Code because it was filed within 135 days of the filing of its administrative claim. (Board's Conclusions of Law Nos. 8–9.)

**8.** 62 Pa.C.S. § 1724(a)(1).

**9.** 62 Pa.C.S. § 1712.1(e).

The Board noted that the 2003 Amendment's shortened deadline for submitting invoices was susceptible to two interpretations: (1) the 2003 Amendment's shortened deadline applied to all invoices submitted on or after its effective date of October 31, 2003; or (2) the shortened deadline only applied to invoices for services provided on or after that effective date. The Board determined that, through the rule of *contra proferentem,* the 2003 Amendment only applied to services provided after the effective date of October 31, 2003, and that the 2002 Master Agreement's original deadline for submitting invoices applied to services provided before that date. The Board further concluded that an absurd result would follow if the 2003 Amendment's shortened invoice submission deadline applied to all invoices submitted after the effective date, regardless of when services were provided, because Dean Tech would have surrendered payment to any unbilled services provided sixty days before the effective date. Thus, the Board concluded that the Department was liable for payment of sixty-four of the eighty-three disputed invoices. (Board's Conclusions of Law Nos. 16, 18, 20–21.)

The Board also concluded that Dean Tech failed to meet its burden of demonstrating that the eighty-three disputed invoices were mailed to the correct address on or around the date indicated on each invoice (between February 2003 and January 2005) and thus failed to meet its burden to establish the presumption of receipt of the disputed invoices by the Department under the "mailbox rule." The Board further concluded that Dean Tech failed to present sufficient evidence to find that there was a consistent course of conduct followed by Dean Tech that the Department knowingly accepted, so as to substitute the Office of Employment Security address for the addresses indicated in the 2002 Master Agreement and 2003 Amendment or to make the Office of Employment Security address the correct address for purposes of the "mailbox rule." Thus, the Board concluded that the January 26, 2007 submittal of nineteen out of the eighty-three disputed invoices was untimely and the Department is not liable for payment of these invoices. (Board's Conclusions of Law Nos. 24, 26–27.)

The Board noted that the doctrine of unjust enrichment does not apply when, as in this case, the issue in dispute is addressed and controlled by the terms of a written contract. Lastly, the Board concluded that Dean Tech cannot recover under the doctrine of equitable estoppel because there was insufficient credible evidence to establish that the Department induced Dean Tech to believe that it could submit invoices to the Office of Employment Security address. (Board's Conclusions of Law Nos. 28–29.) By order dated July 29, 2013, the Board entered judgment in favor of Dean Tech in the principal amount of $89,867.00, prejudgment interest in the amount of $23,252.00, and post-judgment interest.

■ On appeal to this Court,[10] the Department argues that the Board lacked jurisdiction over Dean Tech's August 5, 2009 statement of claim because: (1) Dean Tech's January 20, 2009 letter constituted an administrative claim; (2) the Department's February 11, 2009 letter constitut-

---

10. Our scope of review of a Board's decision is limited to determining whether constitutional rights were violated, an error of law was committed, or findings of fact were supported by substantial evidence. *Department of General Services v. Pittsburgh Building Company,* 920 A.2d 973, 981 n. 11 (Pa. Cmwlth.2007).

ed a final determination regarding Dean Tech's administrative claim; and (3) Dean Tech untimely filed its August 5, 2009 statement of claim pursuant to section 1712.1(e) of the Procurement Code. We disagree.

Section 1712.1 of the Procurement Code provides the process for resolving contract controversies with Commonwealth agencies as follows:

(a) Right to claim.—A contractor may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.

(b) Filing of claim.—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

(c) Contents of claim.—A claim shall state all grounds upon which the contractor asserts a controversy exists.

(d) Determination.—The contracting officer shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor. If the contracting officer fails to issue a final determination within the 120 days unless extended by consent of the parties, the claim shall be deemed denied. The determination of the contracting officer shall be the final order of the purchasing agency.

(e) Statement of claim.—Within 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to by the parties, whichever occurs first, the contractor may file a statement of claim with the board.

(f) Applicability.—The provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this section.

62 Pa.C.S. § 1712.1(a)-(f).

The parties agree that Dean Tech's claim accrued after the Department's December 29, 2008 letter denying payment of the disputed invoices. Under section 1712.1(b), Dean Tech had six months from the accrual of the claim to file its administrative claim with the contracting officer; therefore, regardless of whether the January 20, 2009 letter or the March 23, 2009 letter constituted Dean Tech's administrative claim, the claim was timely filed. However, the Department argues that Dean Tech's January 20, 2009 letter was its administrative claim and therefore, Dean Tech's August 5, 2009 statement of claim filed with the Board was untimely pursuant to section 1712.1(e) of the Procurement Code. The Department also argues that its February 11, 2009 letter was its final determination denying Dean Tech's January 20, 2009 administrative claim and thus Dean Tech had fifteen days from February 11, 2009, to file its statement of claim to the Board. 62 Pa.C.S. § 1712.1(e). We must initially determine whether the Board erred in determining that Dean Tech's March 23, 2009 letter constituted its administrative claim.

Under section 1712.1(b) of Procurement Code, "[a] claim shall be filed with the *contracting officer* within six months of the date it accrues." 62 Pa.C.S. § 1712.1(b) (emphasis added). The Procurement Code defines a contracting officer as "[a] person

authorized to enter into and administer contracts and make written determinations with respect to contracts." 62 Pa.C.S. § 103. Dean Tech addressed its January 20, 2009 letter to Areles Reeves–Luckette (Reeves–Luckette), the Department's Workforce Development Manager, per the instructions in the Department's December 29, 2008 letter sent by Enright. (R.R. at 203a–04a.) However, the Department's February 11, 2009 letter, which it claims is a final determination denying Dean Tech's January 20, 2009 administrative claim, is signed by Enright. Pursuant to section 1712.1(d) of the Procurement Code, "[t]he *contracting officer* shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor." 62 Pa.C.S. § 1712.1(d) (emphasis added). According to the Department's alleged February 11, 2009 final determination, the Department considers Enright the contracting officer, not Reeves–Luckette. Because Dean Tech addressed its January 20, 2009 letter to Reeves–Luckette and not Enright, the contracting officer, the Board properly determined that the letter was not Dean Tech's administrative claim.

Moreover, in order for a written letter to constitute an administrative claim, it must "*state all grounds* upon which the contractor asserts a controversy exists." 62 Pa.C.S. § 1712.1(c) (emphasis added). In its January 20, 2009 letter, Dean Tech did not state all grounds upon which the contract controversy exists but only broad-

ly stated that it disagreed with the Department's denial of payment for the invoices because "every invoice in question was dated and sent within the required timeframe of the Master Agreements" and that "Dean Tech adhered to the rules of the Master Agreements." (R.R. at 205a.) In its March 23, 2009 letter, Dean Tech stated, along with its timeliness claim previously stated in the January 20, 2009 letter, additional claims upon which the contract controversy exists that could have been stated in the January 20, 2009 letter had it been Dean Tech's administrative claim, including claims that the Department had advised Dean Tech to mail the invoices to the Office of Employment Security address and that differing billing addresses were listed in the 2002 Master Agreement. (R.R. at 210a–11a.) Thus, in its January 20, 2009 letter, Dean Tech had not stated all grounds upon which the contract controversy exists in accordance with section 1712.1(c) of the Procurement Code for it to be considered an administrative claim and this date is irrelevant for the purposes of determining the timeliness of Dean Tech's statement of claim filed with the Board. Therefore, contrary to the Department's argument, it follows that the Board properly determined that the Department's February 11, 2009 letter responding to Dean Tech's January 20, 2009 letter is not a final determination because Dean Tech had yet to file its administrative claim.[11]

■ The Department also argues that the Board erred in determining that Dean Tech's March 23, 2009 letter constituted Dean Tech's administrative claim. In ac-

11. We note that the Board also concluded that the Department's February 11, 2009 letter "lack[ed] both the finality and the certainty requisite to be considered a final determination of an administrative claim...." (Board's Conclusion of Law No. 7.) However,

because we determined that the Board did not err in concluding that Dean Tech's January 20, 2009 letter did not constitute an administrative claim, we need not reach a holding regarding the finality of the language in the Department's February 11, 2009 letter.

cordance with the Procurement Code, Dean Tech addressed this letter to Enright, who is the Department's contracting officer according to the Department's February 11, 2009 letter, and stated all grounds upon which the contract controversy exists. 62 Pa.C.S. § 1712.1(b)-(c). Dean Tech's March 23, 2009 letter, sent by Kaplan, addressed each ground upon which Dean Tech claims a contract controversy exists with particularity and discussed claims that were not present within the January 20, 2009 letter. Thus, in accordance with section 1712.1(b) and (c) of the Procurement Code, the Board properly determined that Dean Tech's March 23, 2009 letter constituted its administrative claim.

■ Lastly, the Department contends that Dean Tech's August 5, 2009 statement of claim was untimely filed pursuant to section 1712.1(e) of the Procurement Code, because Dean Tech had fifteen days to file its statement of claim after the Department's February 11, 2009 final determination. However, because the Board properly determined that Dean Tech's January 20, 2009 letter did not constitute Dean Tech's administrative claim and that the Department's February 11, 2009 letter was not a final determination, Dean Tech's limitations period for filing its statement of claim with the Board did not begin until its March 23, 2009 administrative claim. A statement of claim must be filed with the Board "[w]ithin 15 days of the mailing date of a final determination denying a claim *or within 135 days of filing a claim* if no extension is agreed to by the parties, whichever occurs first...." 62 Pa.C.S. § 1712.1(e) (emphasis added). The Department's only response to Dean Tech regarding its March 23, 2009 administrative claim was the let-

ter dated July 31, 2009. The Department never issued a final determination to Dean Tech that denied payment of the disputed invoices pursuant to Dean Tech's March 23, 2009 administrative claim. As the Board notes, August 5, 2009, is exactly 135 days after Dean Tech's March 23, 2009 administrative claim. (Board's Finding of Fact No. 75.) Pursuant to section 1724(a)(1) of the Procurement Code, the Board has exclusive jurisdiction to arbitrate claims arising from "[a] contract entered into by a Commonwealth agency in accordance with this part and filed with the [B]oard in accordance with section 1712.1 (relating to contract controversies)." 62 Pa.C.S. § 1724(a)(1).

Because we conclude that Dean Tech's March 23, 2009 letter, and not Dean Tech's January 20, 2009 letter, constituted Dean Tech's administrative claim, and Dean Tech timely filed its statement of claim within 135 days from the date of its administrative claim in accordance with section 1712.1(e) of the Procurement Code, the Board did not abuse its discretion. Accordingly, we affirm.

### ORDER

AND NOW, this 27th day of March, 2014, the July 29, 2013 order of the Board of Claims is affirmed.